UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JULIE BEBERMAN, Plaintiff, v. REX TILLERSON, Secretary, U.S. Department Of State, Defendant. | ) | Civil Action No. 16-2361 CKK |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant, the Secretary of the U.S. Department of State, hereby moves to dismiss Plaintiff's complaint in its entirety for failure to state a claim. In the alternative, Defendant seeks summary judgment in his favor pursuant to Fed. R. Civ. P. 56.[1]

---

[1] To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of Respondent. See Fed. R. Civ. P. 12(b); 56. Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless he submits his own affidavit or other proper, documentary evidence contradicting the assertions in the documents. See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). The Court, in its December 5, 2016 Order, has also provided further specifics on the manner in which a party must address the proffered statement of material facts. Defendant notes, however, that in *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) , the Court concluded that "[u]nder the Federal Rules of Civil Procedure, a motion for

The grounds for Defendant's motion are more thoroughly explained in the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

CHANNING D. PHILLIPS, DC Bar #415793
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By:_________________________________/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

summary judgment cannot be 'conceded' for want of opposition. 'The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden.'" (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring))). Thus, "[t]he District Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id*. (quoting *Grimes*, 794 F.3d at 97 (Griffith, J., concurring) and citing Fed. R. Civ. P. 56(e)(3)).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JULIE BEBERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 16-2361 CKK |
| REX TILLERSON, | ) | |
| Secretary, U.S. Department Of State, | ) | |
| | ) | |
| Defendant. | ) | |
| ________________________________ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**Preliminary Statement**

Defendant, the U.S. Department of State, submits this memorandum in support of its motion to dismiss Plaintiff's Title VII action pursuant to F.R.C.P. 12(b)(6) and, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56(a).

**Factual Background**

Plaintiff asserts that Defendant, through Defendant's Office of Civil Rights, retaliated against her for her prior protected activity under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act when he informed Plaintiff that the agency would no longer assign Plaintiff collateral duties as an EEO counselor. Comp. ¶¶ 1, 25, and 37. Defendant determined that Plaintiff was not performing her EEO counselor duties neutrally, and therefore, could no longer perform EEO counselor duties. Exhibit 1 (Aff. Of Glenn Budd) at 2. Defendant reached this conclusion after Plaintiff, in her capacity as an EEO counselor, attempted to encourage management to settle an EEO complaint by injecting Plaintiff's own EEO settlement history with another employer into discussions with another EEO complainant's supervisors, by

making judgmental statements in her counselor report of the case, and for lacking neutrality as an EEO counselor. *Id.*

Plaintiff asserts, without factual support, that removal of these collateral duties "contributed to and proximately caused" her "to be denied tenure.[1]" Comp. ¶ 37. Plaintiff asserts further that the tenure denial meant that she was curtailed from her assignment at Embassy Malabo, Equatorial Guinea, and required to report to Washington, D.C. *Id.* at ¶ 38. She states that she was irreparably harmed by no longer being allowed to serve overseas. *Id.* at ¶ 39. She also contends that she is no longer eligible for promotion, hardship pay and housing, service needs differential, or Plaintiff's student loan program. *Id.* at ¶¶ 40 and 41.

This appeal is one of several district court complaints and grievance appeals that Plaintiff has filed concerning either her performance appraisals, her two tenure deferrals in 2014 and 2015 resulting in tenure denial in 2016, and her curtailment from Embassy Malabo, all of which flow from the following facts. *See Beberman v. Tillerson*, Case No. 1:14-CV-00020, D.V.I.; *Beberman v. Tillerson*, Case Nos. 1:16-cv-01006 and Case No. 1:17-cv-00179, Fed. Cl.; and *Beberman v. Tillerson*, Case No. 1:16-cv-00063, D.V.I.

Plaintiff's supervisor in Caracas, Venezuela disabled Plaintiff's access to all consular systems on September 8, 2012, the only time in his career that he has done so. Exhibit 2 (Nov. 7, 2012 Employee Evaluation Report (EER) for Julie Beberman) at 3. He took that action because Plaintiff had inexplicably and inappropriately granted visas. *Id.* When confronted with evidence

[1] The Foreign Service Act permits an initial career appointment of up to 5 years. 22 U.S.C. §§ 3949(a) and 3946(a). In order to determine whether an employee on an initial 5-year appointment should receive a tenured career appointment, selection boards also known as promotion boards or tenure boards review an employee's performance record. 22 U.S.C. § 3946(b) and Exhibit 3 (3 FAH-1 H-2240 Exhibit H-2245.3 Precepts for the Foreign Service Officer Commissioning and Tenure Board).

of the inappropriately granted visas, Plaintiff asserted that she had acted appropriately, even though her assertions and actions contradicted the information provided by the Department of Homeland Security, which indicated that granting the visas was not appropriate. *Id.* Defendant revoked three of the visas Plaintiff issued, including one to a "wanted person," and Homeland Security attempted to revoke the fourth, but was unable to, as the person had already entered the United States. Exhibit 4 (January 29, 2014 Memo from Marcia Bernicat, Deputy Assistant Secretary for Human Resources to Julie Beberman, re Decision to Suspend Julie Beberman) at 4. On November 5, 2012, the Bureau of Consular Affairs determined that Ms. Beberman committed four violations referred to as Visa Lookout Accountability (VLA) violations. Exhibit 2 ( Nov. 7, 2012 EER) at 3. Plaintiff's supervisor noted in his appraisal of her performance that Section 140(c)(1)(B) of P.L. 103-236 requires in cases of VLA violations that "the consular officer's failure shall be made a matter of record and shall be considered as a serious negative factor in the officer's annual performance appraisal. 8 U.S.C.A. § 1182 note.[2] *Id.* In fact, these violations were so grave that Defendant issued Plaintiff a one-day suspension, noting that one of the Visa Lookout Accountability Violations concerned a "wanted person." Exhibit 4 (Decision on Suspension). Additionally, Plaintiff's rater noted that Defendant did not appear to accept responsibility for the errors, or to be moved by the counseling they provided her. *Id.*

---

[2] The note to 8 U.S.C.A. § 1182 states:

> If, at the time an alien applies for an immigrant or nonimmigrant visa, the alien's name is included in the Department of State's visa lookout system and the consular officer to whom the application is made fails to follow the procedures in processing the application required by the inclusion of the alien's name in such system, the consular officer's failure shall be made a matter of record and <u>shall be considered as a serious negative factor in the officer's annual performance evaluation</u>.

Pub. L. 103-236, § 140(c)(1)(B) (April 30, 1994) (emphasis added).

The appraisal was, as required by the Foreign Affairs Manual, placed in Plaintiff's Foreign Service performance file for review by the tenure boards. Exhibit 5 (3 FAM 2831.4) at 1; Exhibit 3 (3 FAH-1 H-2240 Exhibit H-2245.3(B)(2)) at 9. On June 2, 2014, the Tenure Boards declined to grant Plaintiff tenure, and deferred the decision to an additional review, stating that:

> The Commissioning and Tenure Board noted the progress Ms. Julie Beberman has made to date as a Foreign Service Officer career candidate. However, along with this success, the Board also found problem areas specifically in Leadership, Interpersonal, and Communication Skills, and being receptive to feedback concerning official policies and procedures. The rating officer for the period ending on November 7, 2012 noted that she, "displayed extremely poor judgment" in committing two Visa Lookout Accountability (VLA) violations in a 33-day period in which, "Julie failed to follow the procedure for handling this type of name check hit and instead issued the visas." The issue was compounded during a September 4, 2012 counseling session in which, "Ms. Beberman did not appear receptive to counseling with respect to visa decisions." The reviewing officer for the same period wrote, "Repeated mentoring or counseling sessions, emphasizing the importance of the work, never had the desired effect. Our best guidance and advice seem to have been interpreted by Ms. Beberman as a push by management for her simply to take in more applications, refuse a larger percentage' or both." Further, the reviewer wrote, "I tried to put all this in perspective for her by asking her to compare her judgment to that of her peers, current and past, to that of her direct supervisors; and to mine. She was unyielding, stating that her judgment was equal to or superior to all those,

> and she continued to defend this point of view in a counseling session with consular management and a representative from HR thereafter."

Exhibit 6 (August 21, 2014 Email from Jeff Rotering to Julie Beberman).

Following a second review on June 2, 2015, the tenure Boards advised Plaintiff that they had again concluded that they could not yet grant her tenure:

> In Ms. Beberman's previous evaluations, her raters commented specifically about her poor judgment, not so much in committing the four Visa Lookout Accountability (VLA) violations that she committed but in "her apparent lack of concern," and stated that she "was unyielding, stating that her judgment was equal to or superior to all [peers, current supervisors]." Her response to that statement was "it may well reflect more on my training and supervision" rather than any acknowledgement of her part in these decisions.
>
> Her first evaluation cited that while she was successful in several areas outside her core responsibilities, she was not successful in executing her primary duties. Her Area of Improvement in November 2012 noted that "she must take care to follow established procedure regardless of what job she is assigned to." Furthermore, her Areas of Improvement specifically noted her Interpersonal Skills. One evaluation stated that she needs to be cognizant that her style can be seen as confrontational and that "her peers have been made uncomfortable at times by her."

Exhibit 7 (July 28, 2015 Email from Elizabeth Wolfson to Julie Beberman).

Plaintiff's final tenure board review on December 17, 2015, did not result in any feedback, as she had no further opportunity for review. The Director General of the Foreign Service approved the Winter 2015 Tenure Board results on February 25, 2016, and Plaintiff

received notice of the final decision not to tenure her on February 27, 2016. Exhibit 8 (February 27, 2016 Email from Elise Mellinger to Julie Beberman).

Significantly, in contrast to the appraisal, which specifically noted Plaintiff's Visa Lookout Accountability violations, Plaintiff's performance appraisals do not mention the termination of her EEO counselor collateral duties. Therefore, the Boards were not advised that Plaintiff's EEO counselor duties had been terminated.

**Plaintiff's Procedural History**

**1. Virgin Islands Case 1 (Case No. 1:14-CV-00020)**

In 2014, Plaintiff filed a complaint in U.S. District Court for the Virgin Islands alleging that her supervisor in Venezuela, the same one who disabled her consular systems access, discriminated against her on the basis of her age, when he ended her SharePoint portfolio assignment, allegedly demeaned and belittled her, allegedly publicly ridiculed her, counseled her about her low visa refusal rate, and disabled her access to consular systems.

On March 18, 2016, Plaintiff filed an Emergency Motion for a Temporary Restraining Order, asking the court to order Defendant not to end Plaintiff's assignment to Embassy Malabo, following her third tenure denial, the subject of her complaint in the present case. In denying Plaintiff's motion, the district court found that Plaintiff failed to demonstrate irreparable harm. Plaintiff then moved for reconsideration, which the court denied. She then filed an appeal of the denial to the Third Circuit denied. Her appeal asserted that:

> Beberman sought preliminary relief to remain at Embassy Malabo, because Defendants discriminatory and retaliatory animus proximately caused her to be denied tenure and Defendants directed her to depart Embassy Malabo for Washington in the middle of her three-year assignment.

*Beberman v. Kerry* (Case No. 1:14-CV-00020), Brief on Appeal of Denial of Preliminary Injunction at 14. On January 12, 2017, the Third Circuit affirmed the district court's denial of a TRO. The District Court case has been stayed pending resolution of the Third Circuit appeal.

**2. Court of Federal Claims (Case No. 1:16-cv-01006)**

Plaintiff filed a claim in the U.S. Court of Federal Claims for back pay, damages, benefits, interest, and injunctive relief under the Equal Pay Act. In that action, Plaintiff complained that Defendant returned her to Washington, DC, from Embassy Malabo on separation orders after her third tenure denial, and denied her various pay and benefits that she believes she was due (including locality pay, transit subsidies, an overnight stop during her trip from Africa, temporary quarters service allowance, and the opportunity to receive her shipment of household effects). Plaintiff alleged that Defendant's failure to provide her with these benefits is an Equal Pay Act violation because a "known male Foreign Service Officer" whose limited career appointment expired on the same day as Plaintiff's was able to remain at an overseas embassy until he finished his assignment.

On December 8, 2016, following oral argument, the court dismissed her complaint for lack of Court of Federal Claims jurisdiction under 28 U.S.C. § 1500. And on February 1, 2017, the court denied Plaintiff's motion for reconsideration of its December 8 dismissal, following which, Plaintiff re-filed the complaint with the Court of Federal Claims (Case No. 1:17-cv-00179), asserting that a jurisdictional impediment no longer existed for the complaint, and asking the Court of Federal Claims for, among other things, the same injunctive relief that the Third Circuit has denied.

**3. Virgin Islands Case 2 (1:16-cv-00063)**

On April 25, 2016, Plaintiff submitted a request to the Foreign Service Grievance ("FSGB") board concerning her third tenure board denial in March 2016, the subject matter of this case. She stated:

> in the face of overwhelmingly positive additional evaluated experience, shows that the Winter 2015 [Tenure Board] found the weaknesses described three years earlier to be insurmountable, no matter what strengths I had shown over the subsequent three years or the six-month period of additional evaluated experience . . . .

Exhibit 9 (Beberman, Grievance AGS 2016-025, Supplemental Submission) at 2. Significantly, this is the same tenure board whose decision Plaintiff asserts was proximately caused by removal of her EEO counselor collateral duties. Comp. ¶ 37.

On September 20, 2016, Plaintiff filed with the U.S. District Court in the Virgin Islands a Petition for Writ of Mandamus and Appeal of a Foreign Service Grievance Board Order denying Plaintiff's request for an order returning her to her assignment at Embassy Malabo. Plaintiff's motion to dismiss for lack of jurisdiction is pending.

In sum, Plaintiff has three other federal district court complaints pending on the same or related issues, arising from her negative appraisal in 2012, and the tenure boards three successive decisions to deny her tenure, based on its successive determinations that Plaintiff had not demonstrated improvement since the 2012 appraisal, which described Plaintiff's four Visa Lookout Accountability violations. Whatever relief Plaintiff may secure in those actions, it is clear that the removal of her collateral duties as an EEO Counselor do not amount to an adverse employment action or retaliation.

## ARGUMENT

**Legal Standard**

**A. Motion to Dismiss**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In

ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F.Supp.2d 191, 196 (D.D.C. 2002) (citations omitted).

**B. Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.' " *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

**1. Plaintiff Failed to Exhaust Her Administrative Remedies.**

Before filing an EEO complaint, an individual alleging discrimination or retaliation must try to resolve the matter informally by contacting an EEO counselor within 45 days of the date on which the alleged discrimination occurred. 29 C.F.R. § 1614.105; *Drielak v. McCarthy*, 2016 WL 5107000 (D.D.C. 2016) (dismissing Title VII claims involving events that occurred months to years before he contacted an EEO counselor); *Williamson v. Shalala*, 992 F. Supp. 454 (D.D.C. 1998) (dismissing Title VII claims involving events that occurred nearly 2 and ½ months before plaintiff sought EEO counseling). Each discrete discriminatory act starts a new 45-day clock. *Drielak* at *4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002)). Although the requirement to make counselor contact within 45 days is not jurisdictional, the D.C. Circuit has treated it like a statute of limitations. *Id*. (citing *Colbert v. Potter*, 471 F.3d. 158, 167 (D.C. Cir. 2006)).

The Court in *Keeley v. Small*, 391 F.Supp.2d. 30, 41 (D.D.C. 2005), held that dismissal of discrete retaliation claims for failure to contact an EEO Counselor within the 45-day time limit was appropriate even where plaintiff had filed an initial complaint alleging similar allegations. In *Keeley*, plaintiff filed a series of EEO complaints alleging retaliatory denial of promotions, delayed performance appraisals, reductions in responsibility, interference with EEO investigation, and unlawful reprimands. Defendant moved for dismissal of the claims for which the plaintiff had not contacted an EEO Counselor within 45 days of the date of the alleged retaliatory actions. Plaintiff argued that once an initial complaint was lodged alleging discrimination and retaliation, it was unnecessary for an employee to refile a new complaint upon every new instance. The Court reviewed the prevailing precedent including the Supreme Court decision in *Morgan*, and rejected plaintiff's argument on the basis that "*Morgan* . . . .

emphasized 'strict adherence' to the procedural requirements of Title VII . . . [and] has been understood to bar unexhausted claims arising after the filing of an administrative action." *Id.* at 40-41. Accordingly, the Court dismissed all of plaintiff's retaliation claims for which there was no EEO contact within 45 days of the date of alleged retaliation, finding that "[i]n order for plaintiff to pursue his claims in federal court, he must establish that he timely exhausted his administrative remedies for each discrete claim of retaliation." *Id*. at 41.

The Court stated further that "Although the facts of *Morgan* dealt with discrete incidents of discrimination and retaliation occurring prior to any administrative exhaustion of claims, it has been understood to bar unexhausted claims arising after the filing of an administrative action." *Keeley v. Small*, 391 F.Supp.2d. 30, 40 (D.D.C. 2005) (citing *Romero-Ostolaza v. Ridge*, 370 F.Supp.2d 139, 149 (D.D.C. 2005)).

In the present case, Plaintiff notes that the issue accepted for investigation at the administrative stage was:

> Whether the U.S. Department of State discriminated against Complainant, a Foreign Service Officer, on the basis of reprisal (prior EEO activity) when on June 24, 2014, Complainant was issued correspondence from the Chief, Office of Civil Rights, Intake and Resolution Division, removing Complainant from the EEO Counselor program.

Comp. ¶ 9.

The issue in Plaintiff's accepted EEO complaint says nothing about tenure and bears scarce little connection to tenure denial. In fact, Plaintiff made counselor contact regarding the removal of her EEO counselor duties on July 10, 2014, one year and nine months, before the tenure denial at issue in this case. And, as this was not an accepted issue for investigation, the investigator did not pursue the issue with other witnesses. Moreover, as discussed below, the

tenure denial is not a logical or expected result of removal of Plaintiff's collateral duties as an EEO counselor.

A plaintiff is entitled to have a statutory time limit equitably tolled "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Galloway v. Watt*, 2016 WL 2642962 (D.D.C. 2016) at *3, citing *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Plaintiff has pled no such circumstances. Therefore, equitable tolling does not apply.

As Plaintiff did not exhaust administrative remedies with respect to her claim of tenure denial, it should be dismissed.

**2. Plaintiff Has Not Suffered an Adverse Action Related to Her Exercise of Protected Activities.**

When a plaintiff brings a retaliation claim based on circumstantial evidence, the Court analyzes the claim under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that familiar framework, a plaintiff must first establish a prima facie case of retaliation. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). If she can do that, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment decision. *Id.* quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981). Then, plaintiff must prove by a preponderance of the evidence that the employer's proffered reason is actually a pretext for discrimination. *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

To establish a prima facie case of retaliation, "the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her

rights." *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006). In the retaliation context, an adverse action is one that is "harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) at 57 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Unlike in the discrimination context, the "scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *Burlington N.*, 548 U.S. at 67, and therefore, it does not require a materially adverse change in the terms and conditions of employment. *Steele v. Schafer*, 535 F.3d 689, 695–96 (D.C. Cir. 2008); *see also Bridgeforth v. Jewell*, 721 F.3d 661, 664 n.* (D.C. Cir. 2013) (explaining that retaliation "encompass[es] a broader sweep of actions" than wrongful discrimination.).

But even in the retaliation context, the category of adverse events does not include trivial harms: "[a]ctionable retaliation claims are limited to those where an employer causes 'material adversity,' " and the plaintiff still must suffer some objectively tangible harm. *Wiley*, 511 F.3d at 161; *Holcomb*, 433 F.3d at 902. The standard is an objective one that is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington N.*, 548 U.S. at 69.

Normally removal of duties is not an adverse action. *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997). In order to state a claim for which relief may be granted, a claim concerning assignments and duties must plead facts that would establish that decisions about assignments and duties constituted an adverse employment action for retaliation. *Andrades v. Holder*, 845 F.Supp.2d. 305, 308 (D.D.C. 2012). In order to overcome a motion to dismiss, Plaintiff must "allege facts that, when viewed objectively would dissuade a reasonable

worker from making or supporting a charge of discrimination." *Id.* Additionally, the D.C. Circuit has noted its "hesitancy to engage in 'judicial micromanagement of business practices' by second-guessing employers' decisions about 'which of several qualified employees will work on a particular assignment.'" *Baloch v. Kempthorne*, 550 F.3d. 1191, 1197 (D.C. Cir. 2008) (quoting *Mungin*, 116 F.3d at 1556).

Dismissal is appropriate as Plaintiff has not set forth facts sufficient for the court to draw a reasonable inference that Defendant's decision to end the assignment of collateral duties as an EEO counselor resulted in an adverse action, namely the denial of Foreign Service tenure. *Kowal*, 16 F.3d at 1276; *Browning*, 292 F.3d at 242. She has merely pled her conclusion that tenure denial resulted from removal of her collateral EEO counselor duties, but she has demonstrated no connection.

In fact, in her various grievances contesting the Boards' three successive decisions deferring and then denying her tenure, Plaintiff has asserted other causes, unrelated to her EEO counselor duties, for the denial of tenure. Plaintiff stated in her 2016 grievance that:

> the Winter 2015 [Tenure Board] found the weaknesses described three years earlier to be insurmountable, no matter what strengths I had shown over the subsequent three years or the six-month period of additional evaluated experience . . . .

Exhibit 9 (Beberman, Grievance AGS 2016-025, Supplemental Submission) at 4. Plaintiff, therefore, agrees that the basis for the tenure denial was her failure to demonstrate improvement following the November 2012 performance appraisal. Exhibit 6 (August 21, 2014 Email from Jeff Rotering to Julie Beberman); Exhibit 7 (July 28, 2015 Email from Elizabeth Wolfson to Julie Beberman). Moreover, Plaintiff's assertion correctly notes that the Boards consider material in earlier performance appraisals in assessing employees for tenure. Notably references

to her duties as an EEO counselor first appeared in Plaintiff's performance file in December 2013 and May 2014, before the Tenure Boards first reviewed her in July 2014. Exhibit 10 (Beberman 12/2/13 EER) at 4 and Exhibit 11 (Beberman 5/1/14 EER) at 4. And of course, just as the Boards continued to review her negative performance appraisal from November 2012, they continued to review her 2013 appraisals praising her for volunteering for EEO counselor work. However, the July and December 2013 references to her EEO counselor work did not result in any of the Tenure Boards that reviewed Plaintiff's documentation concluding that she should be tenured.

Moreover, the published criteria by which the Tenure Boards evaluate employee performance do not support Plaintiff's conclusory assertion that there is a connection between the termination of EEO counselor duties and the denial of tenure. To the contrary, Defendant's Decision Criteria for Tenure and Promotion detail the standards for judging an employee's support for EEO Principles. Exhibit 13 (Decision Criteria for Tenure and Promotion in the Foreign Service (2013-2014, 2014-2015, and 2015-2016)) at 7; Exhibit 14 (Decision Criteria for Tenure and Promotion in the Foreign Service (2015-2016, 2016-2017, and 2017-2018)) at 6. The Criteria do not provide credit for performance of EEO counselor collateral duties. Instead, they describe standards for judging whether an employee upholds EEO principles in the employee's day-to-day regularly assigned duties. For entry-level employees,[3] the criteria indicate that employees should meet the following standard:

> Takes diversity training and applies its principles to the workplace; treats all individuals with respect and without regard to race, color, gender, religion, national origin,

[3] As an FS-4 employee, Plaintiff is entry level. Exhibit 12 (3 FAM 2241.3(1)).

> age, disability, marital status, genetic information, gender identity, or sexual orientation, and protects them from reprisal; acts in compliance with applicable EEO laws and policies.

*Id.* In addition to the fact that EEO counseling is confidential, and thereby outside the purview of a rater's knowledge, EEO counseling, which is essentially fact gathering and mediation, bears no relationship to the these standards for judging an employee's demonstration of fairness and equity in the day to day work of an office. Exhibit 15 (EEOC, Management Directive-110 (MD-110), Chapter 2, §VIII(E) (available at https://www.eeoc.gov/federal/directives/upload/md-110.pdf)) (providing that information from a counselor's complaint file may be shared only with the EEO Director, agency EEO officials, and possibly management officials alleged to be responsible for actions giving rise to the complaint).

Moreover, while Plaintiff's Tenure Board reviews consistently identify Leadership Skills, Interpersonal Relationships, and Communications as the areas for improvement, the Decision Criteria for Promotion and Tenure identify Support for EEO and Merit Principles as a Managerial Skill—which is not one of her areas for improvement.[4] Exhibit 6 (August 21, 2014 Email from Jeff Rotering to Julie Beberman); Exhibit 7 (July 28, 2015 Email from Elizabeth Wolfson to Julie Beberman); Exhibit 13 (Decision Criteria for Tenure and Promotion in the Foreign Service (2013-2014, 2014-2015, and 2015-2016)) at 7; Exhibit 14 (Decision Criteria for Tenure and Promotion in the Foreign Service (2015-2016, 2016-2017, and 2017-2018)) at 6. In other words, there is no significant connection between Plaintiff's identified skill deficiencies

[4] Plaintiff's rater in 2013 may have identified for his purposes that support for EEO principles was viewed as a Leadership Skill, but the Tenure Boards, referring to the Precepts, identify it as a Management Skill. Exhibit 13 (Decision Criteria for Tenure and Promotion in the Foreign Service (2013-2014, 2014-2015, and 2015-2016)) at 7; Exhibit 14 (Decision Criteria for Tenure and Promotion in the Foreign Service (2015-2016, 2016-2017, and 2017-2018)) at 6.

and her loss of the EEO counselor collateral duties. *Id.*; Exhibit 16 (Declaration of Claire Pierangelo), ¶¶ 4-7.

Furthermore, even if performance of EEO counselor duties could raise her Managerial Skills to an extremely high level, that would not be enough to overcome deficiencies in the skill areas of Leadership, Interpersonal Relations, and Communications, as was demonstrated when Plaintiff was considered by the two earlier Tenure Boards. The Boards' Precepts state:

> In determining whether a candidate meets the criterion, the Board should consider the six skill areas which have been identified as important for successful performance in the Foreign Service. No candidate shall be expected to display all these qualities; thus the Board should avoid negative assumptions regarding qualities that the candidate has had no practical opportunity to display. However, the Board should heed documented evidence that the candidate lacks or is so seriously deficient in these qualities that development of satisfactory competence in any one of the six broad skill areas appears doubtful.

Exhibit 3 (3 FAH-1 H-2240 Exhibit H-2245.3(B)(2)) at 8.

Plaintiff's assertion that reference to her collateral duties would have caused her to meet this standard, and thereby have helped her to overcome the 2012 evaluation's discussion of her Visa Lookout Accountability violations is unsupported and contradicts the evidence, as well as Plaintiff's own grievance assertions. Comp. ¶ 25; and *see supra* at 17-19; Exhibit 9 (Beberman, Grievance AGS 2016-025, Supplemental Submission) at 2; Defendant's Statement of Material Facts, ¶¶ 8-11. The Tenure Boards denied Plaintiff her tenure because she never demonstrated improvement in the areas identified as problems in her November 2012 performance appraisal. *See supra* at 6-8; Defendant's Statement of Material Facts, ¶¶ 2-4, 6, 8-11.

On its own, therefore, the removal of EEO counselor collateral duties or assignments is not an adverse action. It is unconnected to any determination for or against an employee's tenure, and unlikely to cause a reasonable employee to be discouraged from filing an EEO complaint. Indeed, with fewer collateral duties to focus on, Plaintiff would have had more time to devote to correcting the issues that caused her to be denied tenure. See Defendant's Statement of Material Facts, ¶¶ 2-4, 6, 8-11.

Legitimate Non-Discriminatory Reason

Even if Plaintiff could plausibly connect the termination of her counselor duties to her final denial of tenure, Defendant acted for legitimate non-discriminatory reasons in terminating her counselor duties, and in denying her tenure.

On or about June 5, 2014, Glenn Budd, the Chief of the Intake and Resolution Section of Defendant's Office of Civil Rights learned that a case manager in his office had some concerns about an EEO counseling report that Plaintiff produced. He stated that:

> I became concerned about some reported statements and contacted a management official, Jeanette Gray-Watki[s], to confirm whether the statements had been made. Ms. Gray Watki[s] denied making the reported statements and reported some coercive actions that the Complainant had taken, namely her losing her neutrality as a counselor. After taking witness statements and hearing the Complainant admit to making the statement regarding her own settlement, I decided it was necessary to remove the Complainant from her collateral duty as EEO Counselor based upon her loss of neutrality as a counselor and the appearance that she had migrated into more of an advocate role.

Exhibit 1 (Aff. of Glenn Budd in EEO Report of Investigation (ROI) for Complainant Julie Beberman, Complaint No. DOS-0265-14) at 2. Mr. Budd removed Plaintiff's collateral

counselor duties after determining that Plaintiff's reference to her own EEO case with management officials in the course of counseling duties and the errors that Plaintiff introduced into the counseling report demonstrated that she was not acting neutrally as required by the EEOC's guidance and regulations. *Id.* and Exhibit 17 (Aff. of Jeannette Gray-Watkis in Beberman (ROI)) at 2-3.

Plaintiff filed an EEO complaint alleging that Defendant terminated her counseling duties in retaliation for her prior protected activity. Plaintiff did not request a hearing at the EEOC. Accordingly, the Agency issued a Final Agency Decision in July 2015 finding no discrimination. Exhibit 18 (*Beberman v. Kerry*, Final Agency Decision). Plaintiff then appealed to the Office of Federal Operations at the EEOC. The EEOC issued a decision in October 2016 finding no discrimination in Defendant's removal of Plaintiff's EEO counselor collateral duties in 2014. Exhibit 19 (*Beberman v. Kerry*, EEOC Appeal No. 0120152559 (October 2016)). The EEOC's decision on appeal stated that "The Commission finds no evidence that Complainant's prior protected EEO activity was a factor in any of the Agency's actions." *Id.* at 4. This is significant, because the EEOC is the Federal agency responsible for the EEO process. 42 U.S.C. §§ 2000e-4, 2000e-5, and 2000e-12. The EEOC issued the guidance requiring EEO counselor neutrality, and found no discrimination in Defendant's decision to terminate Plaintiff's collateral duties of EEO counselor as a result of a loss of neutrality. Exhibit 15 (EEOC, MD-110, Ch. 2, § I(D) (available at https://www.eeoc.gov/federal/directives/upload/md-110.pdf) ("The EEO Counselor's role is to provide an environment for open dialogue leading to an informal resolution prior to the filing of a complaint. The role is compromised if the EEO Counselor also serves as an investigator of the complaint, as the role of the investigator is that of a neutral fact finder who collects and discovers

factual information concerning the claim(s) in the complaint under investigation and prepares an investigative summary.") at 2; Exhibit 19 (*Beberman*, EEOC Appeal No. 0120152559).

Similarly, even if one assumed for the sake of argument that a connection exists between the termination of Plaintiff's EEO counselor collateral duties and the Tenure Boards' decision not to grant her tenure, the Tenure Board's decision not to grant her tenure was, as the Boards explained to Plaintiff twice, based on her failure to demonstrate improvement since her four Visa Lookout Accountability violations in 2012.

**Conclusion**

For these reasons and those presented in the accompanying statement of material facts, Defendant respectfully requests that its motion be granted, as Plaintiff did not exhaust her administrative remedies with respect to her claim of tenure denial, the termination of her EEO counselor duties does not constitute an adverse action, and Plaintiff has not demonstrated a connection between termination of her counselor duties and the decision to deny her tenure. Additionally, Defendant acted for a legitimate non-discriminatory reason when it terminated her counselor duties upon learning that she had lost her neutrality, and when it denied her tenure, given her record of four Visa Lookout Accountability violations for which she did not show remorse, accept responsibility, or show improvement.

Respectfully submitted,

CHANNING D. PHILLIPS, DC Bar #415793
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By:___________________________________/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

OF COUNSEL:
Marianne Perciaccante
U.S. Department of State

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JULIE BEBERMAN,<br><br>Plaintiff,<br><br>v.<br><br>REX TILLERSON,<br>Secretary, U.S. Department Of State,<br><br>Defendant.<br>_______________________________ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 16-2361 CKK |

DEFENDANT'S STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 7(h) and the Court's December 5, 2016 Order, the Defendant hereby provides the following statement of material facts as to which there is no genuine dispute:

1. Defendant hired Plaintiff on a Limited Career Foreign Service appointment effective January 17, 2010, pursuant to 22 U.S.C. §§ 3949(a) and 3946(a). Exhibit 20 (January 17, 2010 Julie Beberman SF-50 for Excepted Appointment under section 309 of the Foreign Service Act).

2. In November 2012, Plaintiff's supervisor gave her a negative performance appraisal in which he noted that he had disabled Plaintiff's access to all consular systems as a result of four Visa Lookout Accountability violations that Plaintiff committed when she granted visas without regard to negative information in a Department of Homeland Security database. Exhibit 2 (November 7, 2012 Employee Evaluation Report (EER) for Julie Beberman) at 3.

3. Plaintiff's supervisor noted that despite his efforts to mentor and counsel Plaintiff on her performance, "she was unyielding, stating that her judgment was equal to or superior" to

her peers and supervisors. Exhibit 2 (November 7, 2012 Employee Evaluation Report (EER) for Julie Beberman) at 3.

4. Plaintiff's supervisor described Plaintiff's Visa Lookout Accountability violations in her performance appraisal in order to comply with 8 U.S.C.A. § 1182 note, which requires that such violations be recorded in the appraisal. *Id.*; Pub. L. 103-236, § 140(c)(1)(B) (April 30, 1994).

5. At all times relevant to Plaintiff's claims in this civil action federal law provided as follows:

> If, at the time an alien applies for an immigrant or nonimmigrant visa, the alien's name is included in the Department of State's visa lookout system and the consular officer to whom the application is made fails to follow the procedures in processing the application required by the inclusion of the alien's name in such system, the consular officer's failure shall be made a matter of record and shall be considered as a serious negative factor in the officer's annual performance evaluation.

Pub. L. 103-236, § 140(c)(1)(B) (April 30, 1994) .

6. The November 2012 negative appraisal was included in Plaintiff's performance file for review by the Commissioning and Tenure Boards (Tenure Boards). Exhibit 5 (3 FAM 2831.4) at 1; Exhibit 3 (3 FAH-1 H-2240 Exhibit H-2245.3(B)(2)) at 9.

7. Defendant issued Plaintiff a one-day suspension for the Visa Lookout Accountability Violations. Exhibit 4 (January 29, 2014 Memo from Marcia Bernicat, Deputy Assistant Secretary for Human Resources to Julie Beberman, re Decision to Suspend Julie Beberman) at 4.

8. In June 2014, citing Plaintiff's failure to demonstrate improvement since the negative appraisal in November 2012, the Tenure Boards declined to grant Plaintiff tenure and deferred the decision to a future review. Exhibit 6 (August 21, 2014 Email from Jeff Rotering to Julie Beberman).

9. In June 2015, the Tenure Boards again concluded that Plaintiff had failed to demonstrate improvement since the November 2012 appraisal, and therefore, declined to grant Plaintiff tenure and deferred the decision for six months. Exhibit 7 (July 28, 2015 Email from Elizabeth Wolfson to Julie Beberman).

10. Both the June 2014 and June 2015 Boards counseled Plaintiff that her performance appraisals indicated that her performance was deficient in the areas of Leadership Skill, Interpersonal Relations, and Communication Skills. Exhibit 6 (August 21, 2014 Email from Jeff Rotering to Julie Beberman) at 2; Exhibit 7 (July 28, 2015 Email from Elizabeth Wolfson to Julie Beberman).

11. The reasons for rejecting Plaintiff's efforts to secure tenure through the June 2014 Boards accompany this filing as Exhibit 6. (August 21, 2014 Email from Jeff Rotering to Julie Beberman).

12. The reasons for rejecting Plaintiff's efforts to secure tenure through the June 2015 Boards accompany this filing as Exhibit 7. Exhibit 7 (July 28, 2015 Email from Elizabeth Wolfson to Julie Beberman).

13. In Plaintiff's 2016 grievance to the Foreign Service Grievance Board, she asserted that the Tenure Boards based the decision not to tenure her on the performance weaknesses

mentioned in her November 2012 performance appraisal, which discussed her four Visa Lookout Accountability Violations. Exhibit 9 (Beberman, Grievance AGS 2016-025, Supplemental Submission) at 4.

14. The Decision Criteria for Tenure and Promotion identify Support for EEO Principals as a Management Skill, not a Leadership, Interpersonal Relations, or Communications Skill. Exhibit 13 (Decision Criteria for Tenure and Promotion in the Foreign Service (2013-2014, 2014-2015, and 2015-2016)) at 7 and Exhibit 14 (Decision Criteria for Tenure and Promotion in the Foreign Service (2015-2016, 2016-2017, and 2017-2018)) at 6.

15. The Decision Criteria for Tenure and Promotion describe Support for EEO Principals as a skill reflected by an employee's day-to-day interactions with others, in which the employee treats others with respect, but the criteria do not accord value to performing EEO counselor duties. *Id.*

16. Even if Plaintiff's continued performance of EEO counselor collateral duties could have raised her Management Skills to an extremely high level, that could not have overcome Plaintiff's deficiencies in Leadership Skills, Interpersonal Relations, and Communication Skills, as the Tenure Board precepts seek evidence that an employee has demonstrated skill in all of the required skill areas. Exhibit 3 (3 FAH-1 H-2240 Exhibit H-2245.3(B)(2)) at 8; Exhibit 16 (Declaration of Claire Pierangelo), ¶¶ 4-7.

17. In December 2015, the Tenure Boards declined to grant Plaintiff tenure. Exhibit 8 (February 27, 2016 Email from Elise Mellinger to Julie Beberman).

18. On February 25, 2016, the Director General of the Foreign Service approved the decision not to grant Plaintiff tenure. *Id*.

19. On February 27, 2016, Plaintiff received notice that her employment would be terminated as she did not receive tenure. *Id*.

20. In June 2014, Glenn Budd, the Chief of the Intake and Resolution Section of Defendant's Office of Civil Rights Plaintiff's, terminated Plaintiff's collateral EEO counselor duties, after confirming that Plaintiff had discussed her own EEO settlement with management, and thereby demonstrated that she lacked neutrality, while performing duties as a neutral EEO counselor. Exhibit 1 (Aff. of Glenn Budd in EEO Report of Investigation (ROI) for Complainant Julie Beberman, Complaint No. DOS-0265-14) at 2.

21. None of Plaintiff's performance appraisals mentions the termination of her EEO counselor collateral duties. Exhibit 21 (Julie Beberman Employee Evaluation Reports (EERs) May 1, 2015); Exhibit 22 (Julie Beberman Employee Evaluation Reports (EERs) July 24, 2015); Exhibit 23 (Julie Beberman Employee Evaluation Reports (EERs) November 1, 2015).

22. EEO counseling is confidential, and thereby outside the purview of a typical supervisor's knowledge. EEOC, Management Directive-110 (MD-110), Chapter 2, §VIII(E) (page 2-19).

23. Plaintiff made her initial contact with an Equal Employment Opportunity ("EEO") counselor in July 2014, alleging that the decision to terminate Plaintiff's collateral EEO counselor duties was motivated by retaliation for her prior protected activity. Exhibit 24 (Julie

Beberman, EEO Counselor's Report) (found in EEO Report of Investigation (ROI) for Complainant Julie Beberman, Complaint No. DOS-0265-14).

24. Plaintiff filed a formal complaint of discrimination on August 12, 2014, alleging that Defendant's decision to terminate her EEO counselor duties was motivated by retaliation for her prior protected activity. Exhibit 25 (Julie Beberman, Formal EEO Complaint) (found in EEO Report of Investigation (ROI) for Complainant Julie Beberman, Complaint No. DOS-0265-14).

25. On July 7, 2015, Defendant's Office of Civil Rights issued a Final Agency decision regarding Plaintiff's formal complaint, holding that Defendant's decision to terminate Plaintiff's collateral EEO duties was taken for a legitimate nondiscriminatory reason, therefore concluding that the Defendant had not retaliated against Plaintiff for her prior protected activity. Exhibit 18 (Beberman v. Kerry, Final Agency Decision).

26. On October 14, 2016, the Office of Federal Operations at the Equal Employment Opportunity Commission concurred with the finding of Defendant's Final Agency Decision that Defendant had acted for legitimate non-discriminatory reasons, and had not retaliated against Plaintiff for her prior protected activity. Exhibit 19 (Beberman v. Kerry, EEOC Appeal No. 0120152559 (October 2016)).

27. The Equal Employment Opportunity Commission is the Federal agency which regulates the Government agency civil rights programs, including the conduct of EEO counselors. 42 U.S.C. §§ 2000e-4, 2000e-5, and 2000e-12.

28. The EEOC has issued guidance requiring EEO counselor neutrality, and found no discrimination in Defendant's decision to terminate Plaintiff's collateral duties of EEO counselor

as a result of a loss of neutrality. Exhibit 15 (EEOC, MD-110, Ch. 2, § I(D) (available at https://www.eeoc.gov/federal/directives/upload/md-110.pdf) ("The EEO Counselor's role is to provide environment for open dialogue leading to an informal resolution prior to the filing of a complaint. The role is compromised if the EEO Counselor also serves as an investigator of the complaint, as the role of the investigator is that of a neutral fact finder who collects and discovers factual information concerning the claim(s) in the complaint under investigation and prepares an investigative summary.") pages 2-2 to 2-3; Exhibit 19 (*Beberman v. Kerry*, EEOC Appeal No. 0120152559 (October 2016)).

29. Plaintiff did not identify the actions of the Tenure Boards in denying her tenure as an issue for investigation at any stage of the EEO complaint process concerning the termination of her EEO counselor duties, instead merely claiming that her Employee Evaluation Reports ("EERs") after May 1, 2014 will make no mention of Plaintiff's service as an EEO Counselor which will negatively affect the chances of her being tenured or promoted. See Exhibit 24 (Counselor's Report); Exhibit 25 (Formal EEO Complaint); Exhibit 18 (Final Agency Decision); Exhibit 19 (Beberman v. Kerry, EEOC Appeal No. 0120152559 (October 2016)); Exhibit 26 (Plaintiff's EEO Affidavit) (ROI at 000050) at 10.

Respectfully submitted,

CHANNING D. PHILLIPS, DC Bar #415793
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By:______________________________/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

List of Exhibits

Exhibit 1 (Aff. Of Glenn Budd)

Exhibit 2 (Nov. 7, 2012 Employee Evaluation Report (EER) for Julie Beberman)

Exhibit 3 (3 FAH-1 H-2240 Exhibit H-2245.3 Precepts for the Foreign Service Officer Commissioning and Tenure Board)

Exhibit 4 (January 29, 2014 Memo from Marcia Bernicat, Deputy Assistant Secretary for Human Resources to Julie Beberman, re Decision to Suspend Julie Beberman)

Exhibit 5 (3 FAM 2831.4)

Exhibit 6 (August 21, 2014 Email from Jeff Rotering to Julie Beberman).

Exhibit 7 (July 28, 2015 Email from Elizabeth Wolfson to Julie Beberman)

Exhibit 8 (February 27, 2016 Email from Elise Mellinger to Julie Beberman)

Exhibit 9 (Beberman, Grievance AGS 2016-025, Supplemental Submission)

Exhibit 10 (Beberman 12/2/13 EER)

Exhibit 11 (Beberman 5/1/14 EER)

Exhibit 12 (3 FAM 2241.3(1)

Exhibit 13 (Decision Criteria for Tenure and Promotion in the Foreign Service (2013-2014, 2014-2015, and 2015-2016))

Exhibit 14 (Decision Criteria for Tenure and Promotion in the Foreign Service (2015-2016, 2016-2017, and 2017-2018)

Exhibit 15 (EEOC, Management Directive-110 (MD-110), Chapter 2, Excerpts

Exhibit 16 (Declaration of Claire Pierangelo)

Exhibit 17 (Aff. of Jeannette Gray-Watkis in Beberman (ROI)

Exhibit 18 (*Beberman v. Kerry*, Final Agency Decision)

Exhibit 19 (*Beberman v. Kerry*, EEOC Appeal No. 0120152559 (October 2016))

Exhibit 20 (January 17, 2010 Julie Beberman SF-50 for Excepted Appointment under section 309 of the Foreign Service Act)

Exhibit 21 (Julie Beberman Employee Evaluation Reports (EERs) May 1, 2015)

Exhibit 22 (Julie Beberman Employee Evaluation Reports (EERs) July 24, 2015)

Exhibit 23 (Julie Beberman Employee Evaluation Reports (EERs) November 1, 2015)

Exhibit 24 (Julie Beberman, EEO Counselor's Report) (found in EEO Report of Investigation (ROI) for Complainant Julie Beberman, Complaint No. DOS-0265-14)

Exhibit 25 (Julie Beberman, Formal EEO Complaint) (found in EEO Report of Investigation (ROI) for Complainant Julie Beberman, Complaint No. DOS-0265-14)

Exhibit 26 (Plaintiff's EEO Affidavit)

# TABLE OF AUTHORITIES

## Motion

### Cases

*Grimes v. District of Columbia*, 794 F.3d 83 (D.C. Cir. 2015) .................................................. 2

*Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992) ............................................................... 1

*Winston & Strawn, LLP v. McLean*, 843 F.3d 503 (D.C. Cir. 2016)............................................ 2

### Rules

Fed. R. Civ. P. 56(a) ........................................................................................... 1

Fed. R. Civ. P. 56(e) ........................................................................................... 1 - 2

Fed. R. Civ. P. 56(e)(3)........................................................................................ 2

## Memorandum

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 10

*Andrades v. Holder*, 845 F.Supp.2d. 305 (D.D.C. 2012)......................................................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 9

*Baloch v. Kempthorne*, 550 F.3d. 1191 (D.C. Cir. 2008) ........................................................ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 9

*Bridgeforth v. Jewell*, 721 F.3d 661......................................................................... 14

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ........................................................ 9 , 15

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ........................................ 14

*Carter v. George Wash. Univ.*, 387 F.3d 872 (D.C. Cir. 2004).................................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 10

*Colbert v. Potter*, 471 F.3d. 158 (D.C. Cir. 2006) .......... 11

*Drielak v. McCarthy*, 2016 WL 5107000 (D.D.C. 2016) .......... 11

*Galloway v. Watt*, 2016 WL 2642962 (D.D.C. 2016) .......... 13

*Gustave–Schmidt v. Chao*, 226 F.Supp.2d 191 (D.D.C. 2002) .......... 10

*Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006) .......... 14

*Holland v. Florida*, 560 U.S. 631 (2010) .......... 13

*Keeley v. Small*, 391 F.Supp.2d. 30 (D.D.C. 2005) .......... 11-12

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .......... 9, 15

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987) .......... 10

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) .......... 13

*Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549 (D.C. Cir. 1997) .......... 14-15

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .......... 11

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) .......... 13

*Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006) .......... 14

*Romero-Ostolaza v. Ridge*, 370 F.Supp.2d 139 (D.D.C. 2005) .......... 12

*Scott v. Harris*, 550 U.S. 372 (2007) .......... 10

*Steele v. Schafer*, 535 F.3d 689 (D.C. Cir. 2008) .......... 14

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981) .......... 13

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) .......... 10

*Wiley v. Glassman*, 511 F.3d 151 (D.C. Cir. 2007) .......... 13-14

*Williamson v. Shalala*, 992 F. Supp. 454 (D.D.C. 1998) .......... 11

**Statutes**

22 U.S.C. § 3946(b) .......... 2

22 U.S.C. §§ 3949(a) .......... 2

28 U.S.C. § 1500 .......... 7

42 U.S.C. §§ 2000e-4 .......... 20

8 U.S.C.A. § 1182 .......... 3

Pub. L. 103-236, § 140(c)(1)(B) .......... 3

**Rules**

F.R.C.P. 12(b)(6) .......... 1

Fed. R. Civ. P. 12(b) .......... 1

Fed. R. Civ. P. 56 .......... 1

Fed. R. Civ. P. 56(a) .......... 1, 10

Fed. R. Civ. P. 56(e) .......... 1-2

**Regulations**

29 C.F.R. § 1614.105 .......... 11

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment, supporting memorandum, statement of material facts, exhibits and a proposed order has been made by mailing copies thereof to:

Julie Beberman
P.O. Box 7006
Arlington, VA 22207

on this 15th day of March, 2017.

/s/

W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC 20530
(202) 252-2536
mark.nebeker@usdoj.gov