UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIE BEBERMAN,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY BLINKEN,<br>Secretary of State,<br><br>Defendant. | Civil Action No. 16-2361 (TJK) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant respectfully files this reply in further support of his motion to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth in the motion and below, the Court should grant Defendant's motion to dismiss (ECF No. 5).

## INTRODUCTION

Plaintiff's Opposition confirms that this case should be dismissed with prejudice. Plaintiff admits that she split her claim for strategic reasons. She admits that she litigated nearly all of these issues before. With respect to the claims that Plaintiff disputes litigating, one "new" claim is the same as a claim brought twice in previous litigation and the other "new" claim fails to plead a retaliation claim. It is thus time for this litigation to end.

## ARGUMENT

### I. Claim Preclusion Bars Plaintiff's Causes of Action Here

#### A. This Court Has Already Held Correctly that Plaintiff Split Her Claims

The claims here and in *Beberman v. Department of State*, Civ. A. No. 14-0020 (D.V.I.) ("*Beberman 2014*"), and *Beberman v. Tillerson*, Civ. A. No. 17-0048 (D.V.I.) ("*Beberman 2017*"), are virtually identical but for the legal conclusion that the alleged discrimination was based on a different protected characteristic. Emphasizing how identical the claims are, Plaintiff alleges in this case that she was discriminated against on "gender plus age" and brings claims "pursuant to the Age Discrimination in Employment Act . . . for retaliation against her for prior activities protected under the ADEA." Third Am. Compl. ¶ 1.

The Court need not re-determine that these cases are identical because this Court has already decided that the claims and issues are legally identical. When granting the stay, the Court held that "the duplicative nature of the instant lawsuit and [the *Beberman 2014*] case is evident" for two reasons. Order at 2, ECF No. 65. First, "the facts underlying the claims in each case are, by and large, the same. . . . [A]ll but one of the claims here arise from the same facts that form the

basis for claims in the first Virgin Islands case." *Id.* Second, and especially relevant now, "these claims present identical legal issues that do not turn on the alleged basis for the discrimination"—i.e., any differences between ADEA and Title VII claims. *Id.* at 2–3.

In a half-page footnote, Plaintiff derides this Court's reasoning as "first impressions" that were "made without fully developed consideration of the issue, without the more extensive briefing of the issues before it now." Pl.'s Opp'n at 11 n.8. In fact, the Court's decision was made after the parties briefed the duplicative nature of Plaintiff's lawsuits in Defendant's motion to dismiss, the Court requested supplemental briefing (Order, ECF No. 56), and the parties each filed two rounds of supplemental briefing (ECF Nos. 57–60). Plaintiff does not identify any argument in her Opposition that compels a different conclusion.

The only other reason Plaintiff gives to deviate from the previous ruling is that "the District Court of the Virgin Islands had not yet issued the rulings upon which Defendant now relies in asserting preclusion." Pl.'s Opp'n at 11 n.8. As Defendant explained in the Motion, the District of the Virgin Islands' and the Third Circuit's rulings did not turn on any difference between the Age Discrimination in Employment Act and Title VII (*see* Defs.' Mot. at 9–12 (summarizing rulings); *id.* at 28)—confirming this Court was correct when it determined that this case and the Virgin Islands cases "present identical legal issues that do not turn on the alleged basis for the discrimination."[1]

[1] Even if there were legal differences (and there were not) in the resolution of Plaintiff's ADEA and Title VII claims, that would not affect claim preclusion because the claims arose "from the 'same nucleus of facts' adjudicated in the prior litigation." *Tyson v. U.S. Postal Serv.*, Civ. A. No. 22-3715 (RC), 2024 WL 1344461, at *4 (D.D.C. Mar. 29, 2024) (citing *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009)).

**B. Plaintiff Admits that She Split Her Claims**

Plaintiff admits that she deliberately split her claims because she did want to bring all of her legal theories in a venue where they could all be heard: "[A]fter she exhausted her claims regarding her discriminatory and retaliatory tenure denial, based on the cat's paw theory, she filed her Title VII and Rehabilitation Act claims in this Court, which was the only Court with venue over them, and added her claims arising under the ADEA to the matter pending in the Virgin Islands, which had venue over those claims." Opp'n at 10–11. Under the controlling ruling in *Smith v. Horner*, 846 F.2d 1521 (D.C. Cir. 1988), claim preclusion bars Plaintiff from re-litigating her discrimination and retaliation claims here merely because she chose to present an alternative legal theory about the same claims in a forum with ongoing litigation that could not hear her whole claim.

In *Smith v. Horner*, plaintiff sought and was denied disability benefits. *Id.* at 1521–22. He sought review of the denial determination before the Merit Systems Protection Board in the Federal Circuit. *Id.* at 1522. Later in the litigation process, he added a claim that the denial of the disability benefits constituted retaliation under Title VII of the Civil Rights Act. *Id.* The Federal Circuit held that it lacked jurisdiction over the Title VII claim, and Plaintiff re-filed in this Court. *See id.* at 1522–23. The D.C. Circuit held that Plaintiff waived his retaliation claim by choosing to proceed only with the disability benefits claim even though the Federal Circuit did not have jurisdiction over the retaliation claim: "Since a federal district court may hear both claims, but the Federal Circuit may not, it makes little sense for the Federal Circuit to entertain only half of the claim." *Smith*, 846 F.2d at 1523 (citation omitted).

In the alternative, the D.C. Circuit noted that Plaintiff's choice in litigating half of his claim in the Federal Circuit would preclude him from bringing his Title VII theory about the same factual transaction:

> Smith could also be held precluded from litigating his Title VII claim because he "split" his two claims. Smith chose to litigate his disability claim in a court (the Federal Circuit) that could hear less than his entire claim instead of going to the district court, which was competent to entertain both his disability and Title VII claims. Claim preclusion does not turn on whether the first court chosen had jurisdiction as expansive as a later one. All that matters is that plaintiff Smith had the opportunity to litigate both claims in a court of competent jurisdiction (here, the district court), but instead chose to split them. And, moreover, a transfer to the district court, actually mentioned as an option in the Clerk's letter, could easily have brought Smith's disability claim from the Federal Circuit to the district court, where it could be combined with his Title VII discrimination claim.

*Smith*, 846 F.2d at 1524 n.3 (D.C. Cir. 1988) (citations omitted).

This case and *Smith* are indistinguishable. Here, as in *Smith*, Plaintiff added new theories after litigation had begun. Here, as in *Smith*, Plaintiff chose to file a lawsuit in a jurisdiction that could not hear all of the legal theories supporting her claim. Here, as in *Smith*, Plaintiff declined to bring her claim in a jurisdiction that could hear the entirety of her claim. Plaintiff actively resisted Defendant's motion to transfer. Opp'n, *Beberman 2014*, ECF No. 43. Plaintiff admits she did this for strategic reasons. *See* Pl.'s Opp'n at 10 (explaining that she resisted transferring the action to the District of Columbia because she lived in the Virgin Islands and was familiar with the legal community).

Plaintiff argues that *Smith* is different because the first court lacked subject-matter jurisdiction over the Title VII claim, while, here, the first court lacked venue over the Title VII claims. *See* Pl.'s Opp'n at 13–14. But she never explains why that difference matters here. Indeed, right before discussing *Smith*, Plaintiff herself argues that, for preclusion purposes, venue and subject-matter jurisdiction should be considered equivalent. She argues that limits on subject-matter jurisdiction and venue should be treated the same—i.e., as "formal barriers." Pl.'s Opp'n at 13. Thus, Plaintiff does not show that her case can be distinguished from *Smith*.

Moreover, *Smith*'s holding is not unique. *See, e.g.*, *Humphrey v. Tharaldson Enters., Inc.*, 95 F.3d 624, 627 (7th Cir. 1996) ("[B]ecause Humphrey elected to proceed before . . . a forum of

limited jurisdiction, even though he could and should have consolidated all his claims in a single lawsuit before a state or federal judicial tribunal, we hold that the judgment entered in the [first] proceeding now precludes his claims arising under federal law."); *Alfredo's Foreign Cars, Inc. v. Stellantis US LLC*, Civ. A. No. 22-10478 (KMK), 2024 WL 964967, at *7 (S.D.N.Y. Mar. 5, 2024) (holding that preclusion applied when "Plaintiff chose . . . a limited . . . proceeding[ ]even though a court of general jurisdiction was available"); *Falk v. State Bar of Mich.*, 631 F. Supp. 1515, 1521 (W.D. Mich. 1986) ("Plaintiff should not be allowed to hale defendant into a second court simply because the first court in which he chose to sue defendant could not consider all the various theories of recovery arising from his single cause of action."), *aff'd*, 815 F.2d 77 (6th Cir. 1987).

Plaintiff's narrative shows that she realized that she could not bring both legal theories in the District of the Virgin Islands, understood that she could bring her entire claim in the District of Columbia, but decided to split her claim between two courts because she saw a strategic advantage in maintaining the Virgin Islands litigation. Plaintiff also chose to amend both cases to raise claims based on the same factual nexus with barely different legal theories in the two actions. Plaintiff's strategic choices do not counsel against claim preclusion (*contra* Pl.'s Opp'n at 15–18 (arguing preclusion is not appropriate because she could not bring her entire claim in the Virgin Islands)—rather, they are the reason to apply claim preclusion.

## II. <u>Issue Preclusion Bars Plaintiff's Causes of Action Here</u>

Plaintiff's response to Defendant's issue preclusion argument largely focuses on the incorrect level of generality. The Opposition insists that issues have not been disputed when Defendant or the Virgin Islands court did not analyze an issue using exactly the same framework that Plaintiff wanted the court to use. That is not how issue preclusion works. Instead, "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d

245, 254 (D.C. Cir. 1992) (emphases in original); *see also Han v. Fin. Supervisory Serv.*, Civ. A. No. 18-0141 (EGS/GMH), 2019 WL 13253806, at *13 (D.D.C. Sept. 9, 2019) ("[T]he D.C. Circuit has cautioned that the focus of the issue preclusion inquiry is the ultimate issue that was decided (and that is claimed to be preclusive), not the arguments asserted by parties or even the reasoning elucidated by the court[.]"], *R. & R. adopted on other grounds*, 2022 WL 2438513 (D.D.C. July 5, 2022). Here, the relevant issues decided include (1) Plaintiff's claims based on discrimination in Venezuela were not exhausted and her attempt to plead them as discriminatory denial of tenure does not restart the exhaustion clock; (2) the loss of Plaintiff's backup consular duty was not sufficiently adverse to state a discrimination or retaliation claim; (3) Defendant had a legitimate, non-discriminatory reason to transfer Plaintiff; and (4) Plaintiff failed to show pretext, including by use of a purported comparator whose employment situation was too dissimilar from Plaintiff. Because those issues have all been decided, Plaintiff's claims fail.

**A. Plaintiff Admits She Litigated Her "Cat's Paw" Claims (Counts 1, 2, and 3)**

In Counts 1, 2, and 3, Plaintiff alleges that supervisors and coworkers in Venezuela, where she worked from 2011 to 2012, discriminated against her in various ways. Plaintiff was required to initiate contact within an EEO counselor 45 days after the discrimination and she did not do so until March 2016. *See* Third Am. Compl. ¶ 33; Pl.'s Previous Opp'n at 7–9, ECF No. 47. Plaintiff argues that she exhausted these claims because, she contends, her denial of tenure in 2016 was caused by the discrimination and retaliation alleged in 2011 and 2012 but constitutes a separate Title VII injury from the alleged discrimination and retaliation. *Beberman 2014* and *Beberman 2017* squarely rejected Plaintiff's theory and held that the injury occurred in 2011 and 2012 and therefore her claims were not exhausted. *Beberman 2014*, 2018 WL 1998307, at *3–6; *Beberman 2017*, 2018 WL 3795226, at *3–4.

Plaintiff contends that issue preclusion should not apply with respect to exhaustion for two reasons. First, she contends that the issue of "cat's paw" was not litigated, while, in virtually the same breath, pointing out that that specific argument was litigated and that she lost. Second, Plaintiff argues that issue preclusion cannot apply because the court was ruling on exhaustion in the ADEA context and not in the Title VII or Rehabilitation Act context, but the same legal rules apply with respect to claims under all three statutes. At bottom, Plaintiff merely seeks to re-litigate her failure to exhaust—exactly what issue preclusion is meant to bar.

First, Plaintiff argues that issue preclusion does not apply because "the parties did not litigate the issue of whether [Plaintiff] could proceed under a cat's paw theory without exhausting administrative remedies with respect to the underlying discriminatory conduct." Pl.'s Opp'n at 19. However, Plaintiff's own narrative shows that the issue was litigated, even at the level of specificity that Plaintiff argues is necessary. The Opposition states that Defendant argued that Plaintiff failed to exhaust the alleged discrimination and retaliation in 2011 and 2012. Pl.'s Opp'n at 20. In response, Plaintiff admits that she "did . . . explain in Civil No. 2014-20, that she was pursuing a cat's paw theory," and that was her theory about why she could bring claim without exhausting the 2011 and 2012 discrete acts. *Id.* at 21.

Even though Plaintiff admits that she argued in *Beberman 2014* that her claim was properly exhausted, she claims that the court did not decide the issue because it "did not expressly reach whether the cat's paw theory applied." Pl.'s Opp'n at 22. Plaintiff's assertion is mistaken. The Court necessarily determined that Plaintiff could not treat the date of injury as the date that tenure was denied under a "cat's paw theory" because it held that Counts 1 through 3 were really claims about discrete actions in 2011 and 2012 and were therefore not exhausted. The Court expressly

held that Plaintiff could not look to when the tenure board relied on the alleged discrimination as the date from which exhaustion began:

> Plaintiff assumes that the denial of tenure is the point of injury, but that argument does not stand up to the precedent in this Circuit. Plaintiff's focus on when the [tenure board] relied on discriminatory reports looks to the timing of legal injury or the point at which she realized there may have been discriminatory motive underlying past conduct. . . .
>
> Counts 1 and 3, despite Plaintiff's current framing, detail specific discriminatory conduct not by the [tenure board] in denying tenure, but by her Embassy Caracas supervisors that occurred much earlier. . . .
>
> These alleged acts, and those enumerated within Counts 1 and 3 of Plaintiff's Seventh Amended Complaint, constitute Plaintiff's actual injury—causing the clock to begin to run years before she was denied tenure.

*Beberman 2014*, 2018 WL 1998307, at *4–5 (citation omitted). Confirming that this holding was a rejection of the cat's paw theory, the *Beberman 2017* opinion expressly held: "[C]at's paw does not disturb the Court's conclusion that Plaintiff failed to exhaust remedies and timely pursue a claim on the actual discriminatory conduct of which she complains." *Beberman 2017*, 2018 WL 3795226, at *5.

Second, Plaintiff claims that issue preclusion should not apply because different law applies to exhaustion under the ADEA on the one hand and Title VII and the Rehabilitation Act on the other. *See* Opp'n at 23 ("[T]he District Court of the Virgin Islands never determined the precise issue in this case, whether Ms. Beberman had exhausted her Title VII or Rehabilitation Act claims."). Plaintiff is incorrect because the same regulation, 29 C.F.R. § 1614.105, applies equally to all three statutes. *See* 29 C.F.R. § 1614.103 ("Individual and class complaints of employment discrimination and retaliation prohibited by title VII (discrimination on the basis of race, color, religion, sex and national origin), the ADEA (discrimination on the basis of age when the aggrieved individual is at least 40 years of age), [and] the Rehabilitation Act (discrimination on the basis of disability) . . . shall be processed in accordance with this part. Complaints alleging

retaliation prohibited by these statutes are considered to be complaints of discrimination for purposes of this part."); *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (explaining that the same "regulations provide the procedural framework for processing complaints of discrimination not just under the Rehabilitation Act, but also under a panoply of federal anti-discrimination laws, including Title VII . . . [and] the Age Discrimination in Employment Act"); *see, e.g.*, *Perry v. Raimondo*, 101 F.4th 55, 57 (D.C. Cir. 2024) (explaining that, under Title VII and the ADEA, "the employee has forty-five days to report the alleged discrimination to an Equal Employment Opportunity . . . counselor").

Thus, Plaintiff's assertion that her arguments that exhaustion would have been analyzed differently in the District of the Virgin Islands had that court been analyzing a Title VII claim also are misguided. Not only do the same legal standards apply with respect to exhaustion, but Plaintiff's belatedly raised arguments do not show that she properly exhausted. For instance, Plaintiff asserts that if the Virgin Islands court were considering a Title VII claim, "it likely would have been guided by *Green v. Brennan*," 578 U.S. 547 (2016). Plaintiff does not show that *Green* would apply only to Title VII constructive discharges and not to constructive discharges under the ADEA. In any event, *Green* would not apply to any of Plaintiff's cases. By its express terms, *Green* creates a special rule for constructive discharges because "in the context of a constructive-discharge claim, a resignation is part of the 'complete and present cause of action' necessary before a limitations period ordinarily begins to run." 578 U.S. at 554; *see also id.*at 550 ("We address here when the limitations period begins to run for an employee who was not fired, but resigns in the face of intolerable discrimination—a 'constructive' discharge."); *id.* at 565 (Alito, J., concurring in the judgment) ("I would hold that the limitations period for constructive discharge claims—like all other employment discrimination claims—starts running upon a discriminatory

act of the employer."). Neither in *Beberman 2014* nor *Beberman 2017* nor here did Plaintiff allege a constructive discharge.

Similarly, Plaintiff argues that her claims would be exhausted under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (*see* Pl.'s Opp'n at 24–25), but she does not show that *Morgan* is inapplicable to ADEA cases (or applicable only to Title VII cases) and, in any event, misreads *Morgan.* It is well-settled that *Morgan* "distinguishes between Title VII plaintiffs bringing a hostile-work-environment suit—who need not exhaust administrative remedies for every allegedly discriminatory act giving rising to their claim—and plaintiffs challenging terminations, demotions, and other discrete acts, who must do so." *Feloni v. Mayorkas*, Civ. A. No. 22-2094 (JEB), 2023 WL 3180313, at *5 (D.D.C. May 1, 2023). Thus, *Morgan* is not relevant here (or in *Beberman 2014* or *Beberman 2017*) where Plaintiff did not bring any hostile work environment claims.

It is true, as Plaintiff argues, that *Morgan* may allow Plaintiff to refer to her alleged mistreatment in 2011 and 2012 as background evidence for a properly exhausted disparate treatment claim. *See* Pl.'s Opp'n at 26. But "background evidence" would not help Plaintiff. Her (precluded) disparate treatment claim would fail if the conduct that happened at the embassy in Venezuela were merely background evidence because background evidence "cannot independently provide the basis for a finding of . . . liability." *Halcomb v. Off. of Senate Sergeant-at-Arms of U.S. Senate*, 563 F. Supp. 2d 228, 242 (D.D.C. 2008), *aff'd*, 368 F. App'x 150 (D.C. Cir. 2010).[2] As in *Beberman 2014* and *Beberman 2017*, Plaintiff is not using the 2011 and 2012

[2] The case cited in the Opposition reached the same result, holding that unexhausted conduct could be background evidence but that the plaintiff's claims "must be dismissed to the extent that they rely on [the unexhausted] adverse employment actions." *Ravenell v. Mayorkas*, Civ. A. No. 22-3548 (JDB), 2024 WL 1344460, at *11 (D.D.C. Mar. 29, 2024).

incidents to supply circumstantial evidence of animus by the decisionmakers. *See* Pl.'s Opp'n at 21 (quoting her earlier brief to note that she did not allege that decisionmakers regarding tenure held any animus). Here, Plaintiff seeks to base her claim on those actions—not create an inference from them. Plaintiff alleges that the actual discrimination occurred in 2011 and 2012, as the *Beberman 2014* court properly found. *See Beberman 2014*, 2018 WL 1998307, at *4–5 (explaining that Plaintiff's claims were based on purported discrimination by her supervisors in Venezuela). Because she relies on that unexhausted conduct to independently provide the basis for liability, she is not using it as background evidence.

Plaintiff has abandoned her contention that equitable estoppel should apply and has not argued that the District of Virgin Islands' rulings on equitable estoppel were incorrect or do not apply here. *See* Mot. at 20–21 (explaining that equitable estoppel does not apply); *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) (a party waives arguments by failing to make them in opposition to a motion to dismiss).

Plaintiff is merely relitigating arguments that she could have made in *Beberman 2014* and *Beberman 2017*. That is impermissible because issue preclusion bars claims that rely on holdings contrary to *Beberman 2014* and *Beberman 2017*. *See, e.g.*, *Greer v. Bowser*, Civ. A. No. 23-3395 (JEB), 2024 WL 4164618, at *2 (D.D.C. Sept. 12, 2024) ("The Court will not — nor could it — assess whether the previous decisions were correct when determining whether collateral estoppel applies[.]"). Even if preclusion did not prevent re-litigation of exhaustion, Counts 1, 2, and 3 would be unexhausted for the reasons stated in *Beberman 2014* and *Beberman 2017*.

### B. Plaintiff's New Legal Theory About Her Backup Consular Office Duty Is No Bar to Issue Preclusion (Count 5)

In *Beberman 2014*, the district court held that Plaintiff failed to state a retaliation claim with respect to the denial of the opportunity to serve as a backup consular officer because Plaintiff

failed to plead a sufficiently adverse effect on the terms and conditions of her employment: "Plaintiff . . . does not provide any information as to the duties and responsibilities of or selection process for a backup consular officer in order to assess the effect of the denial on her employment record. Therefore, Count 4 must be dismissed for Plaintiff's failure to plead both discrimination and retaliation." *Beberman 2014*, 2018 WL 1998307, at *9. The Court's holding did not turn on any difference between the ADEA and Title VII.

Plaintiff argues that issue preclusion does not apply because the claim at issue in *Beberman 2014* was age-based: "That finding does not preclude Ms. Beberman's Title VII claim, because her Title VII action is not premised on disparate treatment based on age." Pl.'s Opp'n at 27. Plaintiff provides no explanation why *Beberman 2014* or *Beberman 2017* would have been different had the court been analyzing a Title VII claim instead of the ADEA claim that was presented. The labels are immaterial here. Both statutes required Plaintiff to plead a sufficiently adverse action under the exact same standard with reference to Plaintiff's discrimination and retaliation claims, respectively. *See, e.g.*, *Canete v. Barnabas Health Sys.*, 718 F. App'x 168, 168–69 (3d Cir. 2018) ("ADEA claim elements are 'substantially the same' as Title VII claims, including the adverse employment action requirement" (quoting *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 n.6 (3d Cir. 2003)); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others.").

Next, Plaintiff claims that her discrimination claim was dismissed only on the basis of causation and not failure to plead an adverse action. *See* Opp'n at 28 ("The District Court of the Virgin Islands did not dismiss Ms. Beberman's age discrimination claim in Civil No. 2014-20 for

failure to plead an adverse action, but only for failure to sufficiently plead that she was discriminated against based on her age."). Even if true, that would not bar issue preclusion here because her allegations about age-based discrimination there are the same as her allegations of discrimination based on other statuses here, but for her legal conclusion as to which status was responsible. In any event, *Beberman 2014* held that Plaintiff had not pleaded factual allegations to show that failing to be selected as a backup consular officer "involve[d] change to the compensation, terms, conditions, or privileges of employment." *Beberman 2014*, 2018 WL 1998307, at *9; *see also id.* at *8 ("Defendants argue that Plaintiff's claim fails under the Rule 12(b)(6) standard because Plaintiff does not establish a causal connection between her age and the allegedly adverse action, nor demonstrate that this denial was adverse."). And *Beberman 2017* confirmed that Plaintiff's failure to plead an adverse action was fatal to her discrimination and retaliation claims. *See Beberman 2017*, 2018 WL 3795226, at *5 ("In its opinion on Defendants' motion to dismiss in Civ. No. 14-20, the Court concluded that she failed to state a claim for discrimination because the adverse effect of losing this opportunity was too speculative to qualify as an adverse action by the employer, a required element of a prima facie case for discrimination.").

Plaintiff also argues that issue preclusion does not apply because she was not on notice that she needed to provide details about the selection process for the position. Pl.'s Opp'n at 33–35. This considers the issue litigated at the wrong level of specificity. In fact, as the *Beberman 2014* court expressly held, the parties litigated whether failure to serve as a backup consular officer was sufficiently adverse. *See Beberman 2014*, 2018 WL 1998307, at *8 ("Defendants argue that Plaintiff's claim fails under the Rule 12(b)(6) standard because Plaintiff does not establish a causal connection between her age and the allegedly adverse action, nor demonstrate that this denial was adverse."). Plaintiff recognized that Defendant argued that removing her backup consular duties

did not change the terms and conditions of her employment: "Defendants concede that they removed Beberman's consular duties, but contend that their action caused her no objective harm, because she continued to have the same responsibilities, requiring the same skills and knowledge and received positive performance evaluations at Embassy Malabo." Pl.'s Opp'n at 14, *Beberman 2014*, ECF No. 143. Plaintiff's choice not to respond substantively to that part of Defendant's argument is not relevant to the preclusion analysis. *See In re Se. Banking Corp.*, 69 F.3d 1539, 1553 (11th Cir. 1995) ("It appears the trustee may have, in the prior litigation, selected a litigation strategy he now regrets, placing all his eggs in the . . . basket [of a different argument in response to another party's argument]. But his choice of that strategy will not prevent the application of collateral estoppel."); *cf. UMC Dev., LLC v. District of Columbia*, 401 F. Supp. 3d 140, 157 (D.D.C. 2019) (holding that the plaintiffs' "own litigation strategy is largely to blame for their" concerns and that did not implicate a full and fair opportunity to litigate). There cannot be any dispute that the adversity of Defendant's action was at issue. Indeed, in her Opposition, Plaintiff further admits that "argued she had sufficiently alleged an adverse action in her Third Circuit appeal." Opp'n at 35 n.11.

Plaintiff argues that issue preclusion should not apply because the Virgin Islands' decision was based on a pleading, citing *Perry v. Int'l Bhd. of Teamsters*, 247 F. Supp. 3d 1, 10 (D.D.C. 2017). Opp'n at 35. In so doing, Plaintiff misunderstands both issue preclusion and *Perry.* Issue preclusion applies to cases dismissed with prejudice for failure to adequately plead issues just as it does for any other dismissal with prejudice: "A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof." Restatement (Second) of Judgments § 27 cmt. g (1982). Indeed, *Perry* itself explains that "dismissals of a complaint for failure to state a claim are, by default, adjudications on the merits and with prejudice." *Perry*,

247 F. Supp. 3d at 9. In the context of *Perry* itself, the previous adjudication expressly dismissed the case without prejudice as an exception to the usual rule: "The accompanying order both granted [defendant's] motion to dismiss the complaint, and dismissed the case without prejudice." *Perry*, 247 F. Supp. 3d at 9. Here, by contrast, *Beberman 2014* and *Beberman 2017* did not indicate that the dismissals were without prejudice. *See, e.g.*, Order, *Beberman 2014* (D.V.I. Apr. 27, 2018), ECF No. 149; Order, *Beberman 2017* (D.V.I. Aug. 9, 2018), ECF No. 16. Indeed, the Third Circuit would not have had appellate jurisdiction to take Plaintiff's appeal if each of the claims in *Beberman 2014* and *Beberman 2017* were not finally determined—i.e., with prejudice. *See, e.g.*, *Bass v. Carroll*, 251 F. App'x 75, 76 (3d Cir. 2007) ("The rule of finality requires that the judgment be final as to all parties and all causes of action."); *Weber v. McGrogan*, 939 F.3d 232, 237 (3d Cir. 2019) ("[A] dismissal without prejudice and with leave to amend isn't a final order."). Plaintiff argued, and the Third Circuit agreed, that the Third Circuit had jurisdiction over Plaintiff's appeal. *See* Appellant's Br. at 1, *Beberman v. Dep't of State*, No. 19-2745 (3d Cir. Oct. 6, 2020) ("This Court has jurisdiction under 28 U.S.C. § 1291 over Appellant Plaintiff Julie Beberman's timely appeal of the District Court of the Virgin Islands' final judgment in favor of Appellees-Defendants U.S. Department of State and Secretary of State."); *Beberman*, 2022 WL 2037944, at *2 ("Beberman timely appealed the adverse judgments in both cases, bringing them within this Court's appellate jurisdiction.").

As with her other claims, Plaintiff attempts to relitigate the Virgin Islands court's conclusion. She argues that the District of the Virgin Islands did not consider the totality of her complaint and misapplied the standard of review on a motion to dismiss. Pl.'s Opp'n at 33–34. The places to make that argument were in the District of the Virgin Islands and before the Third Circuit. She argues that the District of the Virgin Islands should have independently considered

the "chilling effect" in addition to whether the action was adverse. Pl.'s Opp'n at 33. This argument is nothing more than the unsupported legal conclusion that losing the EEO position would dissuade a reasonable employee and ignores that whether an action is adverse is already based on its tendency to chill. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (explaining that the test is "*material* adversity" because retaliation claims "prohibit[] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers" (emphasis in original)).

Plaintiff also argues that the District Court should have assumed that backup consular officer duties would have allowed her to get tenure. Pl.'s Opp'n at 33–34. Again, Plaintiff had every opportunity to raise this issue before the District of the Virgin Islands and the United States Court of Appeals for the Third Circuit.

Finally, contrary to Plaintiff's contentions, the standards in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), and *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), do not apply because preclusion does. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) "[T]he res judicata consequences of a final . . . judgment on the merits" is not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). Plaintiff does not contest that point, nor does she contest that *Muldrow* does not apply to federal employees, and therefore waives those arguments. *See* Mot. at 26–27; *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) (a party waives arguments by failing to make them in opposition to a motion to dismiss).

### C. Plaintiff Cannot Distinguish the Previous Rulings About Her Transfer (Counts 6, 7, and 8)

In this case, Plaintiff brought three claims that are based on the premise that her transfer from Equatorial Guinea to Washington, DC, was discriminatory, retaliatory, or both: Counts 6, 7, and 8.

In Count 6, Plaintiff alleges that her supervisor did not request that she remain at her post in Equatorial Guinea because "Embassy Caracas" tainted Plaintiff's supervisor's perception of Plaintiff and because the supervisor was aware that Plaintiff "had engaged in EEO activities and had matters pending." 3d Am. Compl. ¶¶ 248–49, 253. The Third Circuit held that Plaintiff's argument was "pure speculation and does not suffice to show pretext," *Beberman*, 2022 WL 2037944, at *4, and that Defendant "had legitimate, non-retaliatory reasons for transferring [Plaintiff] to Washington, D.C." *Beberman*, 2022 WL 2037944, at *4, *9.

Plaintiff admits that "Count 6 is barred by issue preclusion." Opp'n at 1; *see also id.* at 18. Plaintiff does not explain why issue preclusion applies only to Count 6 and therefore why the issue preclusion that applies to Count 6 does not apply equally to each of the other adjudicated claims, nor does she explain why she maintained a precluded claim for years after the final ruling. *Cf.* Pl.'s Status Rep. at 2–3 (arguing that Defendant should be required to prove preclusion and suggesting that preclusion did not apply).

Plaintiff claims that Count 7 is not issue precluded because Count 7 "covers the differences in the transfer orders that Defendant issued to Ms. Beberman and a male comparator, and the differences in the work Defendant gave them, after they both were transferred, while on interim relief from separation." Opp'n at 18. This is the same argument that the transfer was discriminatory but with a legal theory about a comparator. Indeed, the Third Circuit held as much. With respect to the equivalent of Count 6, the Third Circuit held, "In another effort to prove that

the State Department's adherence to its general transfer policy was pretextual, Beberman posits that her supervisors in Caracas influenced the Ambassador in Malabo to retaliate against her. That is pure speculation and does not suffice to show pretext." *Beberman*, 2022 WL 2037944, at *4. With respect to the equivalent of Count 7, the Third Circuit then noted, "Beberman also relies on comparator evidence to prove pretext." *Beberman*, 2022 WL 2037944, at *5. The court concluded that the comparator evidence did not establish pretext. Accordingly, the same issues were resolved and the same preclusion applies.

When the Third Circuit squarely held that Plaintiff was using an inappropriate comparator, it did so without regard to any of Plaintiff's protected characteristics:

> [T]hat employee was not similarly situated to Beberman for purposes of the remain-at-post decision. He was assigned to a different embassy, had different job duties, and reported to a different supervisor. Because those differing facts are relevant to the transfer decision, he is not a valid comparator to Beberman for the remain-at-post decision.

*Beberman*, 2022 WL 2037944, at *5. Thus, the alleged comparator remains an inappropriate comparator regardless of which protected characteristic Plaintiff conclusorily alleges caused the transfer. *See Beberman v. United States*, No. 17-179 C, 2024 WL 1340204, at *3 (Fed. Cl. Mar. 29, 2024) ("[T]he district court and Third Circuit rejected Beberman's use of [the comparator] as a comparator for her Title VII and ADEA claims."). Because the Third Circuit held that Plaintiff failed to establish pretext for her ADEA claims, Counts 6 and 7 fail.

Plaintiff argues that Count 8, which is based on the same allegedly discriminatory transfer as Counts 6 and 7, survives preclusion because "[she] alleges in Count 8, that Defendant discriminated against her in transferring her to Washington so that . . . a younger, Native American male, could fill her position as a Political/Economic Officer." Pl.'s Opp'n at 38. Putting a new "so that" at the end of the sentence does not create a new claim.

Indeed, she admits that, just like Count 7, it is merely another argument about pretext: "While the Third Circuit found that Defendant had a legitimate reason for transferring her to Washington, it did not have this set of facts before it to determine whether there was a pretext." Opp'n at 38–39.

Plaintiff cannot defeat issue preclusion on pretext (or, for that matter, claim preclusion) merely by belatedly presenting a new argument to prove pretext. *See Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 452 (D.D.C. 2014) ("Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." (quoting *Yamaha Corp. v. United States*, 961 F.2d 245 (D.C. Cir. 1992)); *cf. Brewer v. District of Columbia*,105 F. Supp. 3d 74, 87–89 (D.D.C. 2015) (plaintiff could not relitigate whether a reduction in force was pretextual even if the legal theories about why the reduction in force was pretextual were different); *Willis v. Gray*, Civ. A. No. 14-1746 (KBJ), 2020 WL 805659, at *7 (D.D.C. Feb. 18, 2020) (plaintiff barred from litigating whether a reduction in force was a pretext after his union already litigated that issue).

Here, even on Plaintiff's telling, she could have introduced evidence that her successor was not like her demographically and then raised the same conclusory argument that discrimination (based on age in that case) must have been involved. Plaintiff alleged that she "learned on September 18, 2018" that her replacement was "a younger male Foreign Service Officer of Native American descent." Third Am. Compl. ¶¶ 273–274; *accord* Opp'n at 39 ("Ms. Beberman alleges that she did not learn that Mr. Lamm had been selected to take her place until September 18, 2018[.]"). Plaintiff did not oppose Defendant's motion for summary judgment on her discriminatory and retaliatory transfer claims until September 9, 2019—roughly a year later. *See Beberman*, 2020 WL 502891, at *3 ("Defendants filed a Motion for Summary Judgment on July

31, 2019. (ECF No. 218.) Plaintiff opposed. (ECF No. 228.) The Court held oral argument on the Motion on December 10, 2019. (ECF No. 245.)"); Pl.'s Opp'n, *Beberman 2014* (D.V.I. Sept. 9, 2019), ECF No. 228. Plaintiff also had the opportunity to take discovery in that case, including asking questions about her successor at the depositions of both decision makers that she claims selected her successor. *See, e.g.*, Pl.'s Opp'n Ex. 7, *Beberman 2014* (D.V.I. Sept. 9, 2019), ECF No. 231-7 at 32 (asking whether Julie Furuta-Toy had "notify[ied] anyone . . . that [she] wished to put [the successor] in·that position") (May 28, 2019 deposition of Julie Furuta-Toy); *id.*, ECF No. 231-7 at 81 (asking "how would [she] compare [the successor's]·qualifications to [the Plaintiff's] qualifications"); Pl.'s Opp'n Ex. 18, ECF No. 232-8, at 23 (asking "[w]ere you and [the successor] friendly, friends") (June 17, 2019 deposition of Petra Joy Zabriskie). Indeed, Plaintiff actually took the deposition of the successor. *See* Pl.'s Opp'n Ex. 59, *Beberman 2014* (D.V.I. Sept. 9, 2019), ECF No. 236-9. Plaintiff's strategic decision not to make this pretext argument in *Beberman 2014* does not allow her to re-argue pretext now.

Even if Plaintiff were not barred from pursuing this claim based on claim preclusion and issue preclusion with respect to whether the transfer was discriminatory, Plaintiff still fails to state a claim because she plainly failed to exhaust her claim.

"An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Plaintiff's transfer occurred sometime prior to August 9, 2016, but she initiated contact with a counselor about this claim in 2018. *See* Third Am. Compl. ¶¶ 35 ("On August 9, 2016, [Plaintiff] filed a . . . complaint . . . regarding . . . her transfer from Embassy Malabo to Washington, D.C."); *id.* ¶ 46 ("She sought informal

counseling on October 10, 2018, less than 45-days after she discovered that she had been discriminated against based on her race and gender.").

Plaintiff's argument that she discovered different purported proof of her discrimination does not restart the 45-day clock. "[T]he 45-day time period . . . 'begins to run when an employee has a reasonable suspicion of a discriminatory action'" *Moore v. Castro*, 192 F. Supp. 3d 18, 38 (D.D.C. 2016) (quoting *Adesalu v. Copps*, 606 F. Supp. 2d 97, 102 (D.D.C. 2009)), *aff'd*, 775 F. App'x 2 (D.C. Cir. 2019)—not when Plaintiff had a reasonable suspicion of each separate alleged motive. Plaintiff concedes, as she must, that she had long ago "suspect[ed] Defendant had discriminated against her." Opp'n at 39. This is confirmed by public court filings. *See* Mot. at 12–13 ("[B]y 2018, she had already been claiming in litigation for years that her transfer was discriminatory.").

In the alternative, Plaintiff argues that equitable tolling should apply because she "knew of [her] injury, but was unaware that Defendant's misconduct had been the cause." Opp'n at 40 (quoting *Chung v. Dep't of Just.*, 333 F.3d 273, 279 (D.C. Cir. 2003). Again, Plaintiff's own filings show that she blamed Defendant for the alleged injury years prior. Nor can Plaintiff show that Defendant took "active steps" (Opp'n at 40) to prevent her from learning relevant facts.

Plaintiff "bears the burden of pleading and proving facts supporting equitable tolling." *Anderson v. Garland*, Civ. A. No. 23-2674 (TNM), 2024 WL 3509481, at *4 (D.D.C. July 22, 2024) (quoting *Aceto v. England*, 328 F. Supp. 2d 1, 5 (D.D.C. 2004)). All that Plaintiff alleges is that "she was not informed that [her successor] had been selected to replace her" (Third Am. Compl. ¶ 41); she "assumed" her position "would be filled by someone outside the embassy" (*id.* ¶ 42) and that her successor failed to update his email signature (*id.* ¶ 43). The Opposition improperly attempts to supplement her Third Amended Complaint further by adding that it "would

have been customary for transition purposes" to inform her about her successor. Opp'n at 40; *see Spence v. Dep't of Veterans Affs.*, 109 F.4th 531, 536 (D.C. Cir. 2024) ("Trained lawyers are generally not unsophisticated litigants in need of special protections, and any leniency afforded is left to the discretion of the district court."). The "passive concealment of the selection process" that Plaintiff alleges is "[c]ertainly nothing wrong enough to warrant equitable tolling." *Lewis v. McDonough*, 703 F. Supp. 3d 95, 108 (D.D.C. 2023).

## III. Plaintiff Fails to Allege that Removal from her Position as EEO Counselor Is Materially Adverse

To plead a retaliation claim, "a plaintiff must plausibly plead that "she suffered (i) a materially adverse action (ii) because [she] had brought or threatened to bring a discrimination claim." *Garza v. Blinken*, Civ. A. No. 21-2770 (APM), 2023 WL 4623085, at *3 (D.D.C. July 19, 2023) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008)). Plaintiff argues that she established causation because "Defendant terminated Ms. Beberman as an EEO Counselor because it learned she had previously successfully opposed an unlawful employment practice." Opp'n at 2; *see also id.* at 1–3. But that is not at all what Plaintiff pleads. She pleads that she was terminated because "she told a Responsible Management Official (RMO) that she had previously prevailed in an EEO matter." Compl. ¶ 194. This is improper behavior wholly apart that occurred after the Department learned about Plaintiff's equal opportunity conduct. To some degree, a Responsible Management Official is the subject of an EEO investigation. *See Role of the Responding Mangamenet Official In the EEO Complaint Process*, Dep't of Agricul., https://www.ars.usda.gov/ARSUserFiles/ODEO/Roles%20and%20Responsibilities%20for%20Responding%20to%20Management%20Officials.pdf (last visited Sept. 17, 2024) ("A Responsible Management Official (RMO), sometimes referred to as the Responding Management Official, in EEO cases, is the official(s) who, according to the complainant's allegations, is (are) responsible

for the action or made the decision that allegedly harmed the complainant."). Plaintiff's bizarre boasting about her own success as a complainant could call the neutrality of the inquiry into doubt and make a Responsible Management Official doubt whether the process was fair.

Nor does Plaintiff plead temporal causation. *See Feloni v. Mayorkas*, Civ. A. No. 22-2094 (JEB), 2023 WL 3180313, at *11 (D.D.C. May 1, 2023) ("Although 'neither the Supreme Court nor the [D.C. Circuit] has established a bright-line three-month rule,' this Circuit has generally found that such a gap between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation." (quoting *Keys*, 37 F. Supp. 3d at 373)); Third Am. Compl. ¶¶ 17–19 (referring to alleged protected activity more than three months before her EEO counselor duties were removed).

In any event, the more serious issue with Count 4 is that removing Plaintiff's EEO counselor duties was not materially adverse to Plaintiff. Plaintiff was required to plead that removing her EEO counselor duties "result[ed] in tangible job consequences like a change in pay, position, or promotional opportunities." *Little v. Garland*, Civ. A. No. 22-cv-1511 (DLF), 2023 WL 2913642, at *2. (D.D.C. Apr. 12, 2023) (quoting *Heavans v. Dodaro*, Civ. A. No. 22-836 (BAH), 2022 WL 17904237, at *9 (D.D.C. Dec. 23, 2022)).

Plaintiff does not contest that her EEO counselor duties were "collateral" and minor. *See* Opp'n at 1 ("[Plaintiff] alleges that Defendant retaliated against her when it terminated her collateral duty role as an EEO Counselor[.]"); *see also id.* at 6 (not contesting that the duties were "minor"). Plaintiff also provides no law showing that eliminating collateral, minor duties is sufficiently adverse. *But see* Mot. at 30 (citing cases holding that eliminating collateral duties is not sufficiently adverse).

Plaintiff argues there was a chilling effect (Opp'n at 4–5), but this is a bare legal conclusion that parrots the elements of the claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (cleaned up; quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

Plaintiff also claims that the removal of her EEO counselor duties caused her to lose her tenure because her performance reviews "did not reflect what would have been her consistently sound performance as an EEO Counselor." Opp'n at 5–9. If "assum[ing] that not serving as a back-up consular was adverse and bore on her tenure denial require[d] the Court to make undue speculation in Plaintiff's favor," *see Beberman 2017*, 2018 WL 3795226, at *5, then even more speculation is required when discussing additional service of a duty that is unrelated to any of Plaintiff's several weaknesses at work (*see, e.g.*, Mot. at 2–3) and that Plaintiff admits is collateral.

## IV. <u>Further Amendment Should Not Be Allowed</u>

Plaintiff asks for leave to further amend. *See* Opp'n at 35–36. This is the Third Amended Complaint (and thus the fourth total complaint), eight years into obviously duplicative litigation. Any belief this case might have been viable was extinguished in 2022 when the Third Circuit issued its ruling, and Plaintiff has had more than two years to consider whether there was anything to salvage. There is not. Further amendment would be futile and prejudicial.

## CONCLUSION

Plaintiff has a simple employment dispute with the Department of State. Unhappy with the consequences of her inability to obtain tenure, Plaintiff, a trained lawyer, has multiplied the

litigation surrounding that dispute, resulting in more than a dozen cases. As a tactical matter, Plaintiff's voluntary choice has allowed her to file thousands of pages in support of her cause, instead of having a single page limit applied to her filings. Plaintiff was also able litigate to completion a case based on the "same facts" and that present 'identical legal issues" to the claims in this case, Order at 2–3, ECF No. 65, in her preferred home jurisdiction, even though Title VII's venue statute plainly made litigation here more efficient.

Now Plaintiff must accept the bitter with the sweet. Having voluntarily split her claims for strategic purposes and gained the benefits of having done so, she must also accept that one court's ruling on the same transaction or occurrence is final for others. For the reasons stated in Defendant's motion and above, the Court should dismiss the Third Amended Complaint with prejudice.

Dated: October 1, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: *_______/s/ Brian J. Levy_______*
BRIAN J. LEVY
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-6734

*Attorneys for the United States of America*